# The Ohio and Mississippi Railroad Company

*v.*

# Herman G. Weber.

*Filed at Ottawa May 14, 1880—Rehearing denied November Term, 1880.*

1. TAXATION—*of property in this State, of a railroad company, formed by consolidation, when one of the constituent companies was of this State, and others of other States.* When a corporation is formed under our laws by the consolidation of other corporations, one of which was incorporated under the laws of this State, and the others in other States, the new, or consolidated company, is to be considered as "incorporated under the laws of this State," within the meaning of the last clause of the first section of the Revenue act of March 30, 1872, and the capital stock of such corporation in this State is subject to taxation here.

2. SAME—*mode of finding value of capital stock and rolling stock of a railroad company, operating its road in this and other States.* The State Board of Equalization found the value of the capital stock and rolling stock of a railroad corporation, operating its road and franchise in this and other States by a continuous line, by taking the value of the entire capital stock, and all the rolling stock of the corporation everywhere, and set apart so much of the entire value of each, for taxation in this State, as the proportion of the length of its main line, in this State, bore to the length of the entire line of the road owned and operated by it. It did not appear whether this was done from their own knowledge, or from information from other sources, and there was nothing to show fraud or illegality in their action: *Held,* in the absence of proof to the contrary, that the mode adopted by them, and the conclusion they reached, was fair and reasonable, and that this was not an assessment of any part of its property in the other States.

3. SAME—*definition of classes of railroad property subject to taxation.* Under the statute, the property of railroad companies is thus classified and defined for the purposes of taxation: the "capital stock" means all the property and rights of the corporation, of every kind and nature, wherever located. The "railroad track" embraces property held for right of way, including superstructures thereon, and this is declared to be real estate. "Rolling-stock" embraces the movable property of the corporation, which is declared personal property, and this is such property as, in its ordinary use, is taken from one part of the line to another, as cars, locomotives and their attachments, and usual accompaniments: "Personal property, other than rolling-stock," embraces tools, materials for repairs, and all other property which, in its ordinary use, is not taken from one part of the line to another, and the local property, the railroad track, and rolling stock, constitute the tangible

property of the corporation, and all other kinds of property, embracing the franchise and such other values as are inaccessible to the local assessors, the intangible property, and all those combined, constitute the capital stock.

4. Same—*object of the law in taxing railroad companies.* The object of the legislature, in regard to the assessment of railroad corporations, was and is to subject each railroad company in the State to taxation, in proportion to the value of all its property liable to be taxed, whether tangible or intangible, real, personal or mixed, embracing, among other kinds of property, the franchises granted or exercised within this State.

5. Same—*mode of assessing capital stock in excess of value of tangible property.* A rule adopted by the State Board of Equalization, for the assessment of the capital stock of corporations, that the value of all shares of the stock, and the value of all the debts, excluding those for current expenses, should be added together to ascertain the fair cash value of the capital stock, or entire property, including the franchises, and that from this sum should be deducted the amount of the value of all tangible property, and that the remainder should be taken as the fair cash value, to be assessed for taxation, was sustained on an application to enjoin the collection of a tax levied upon such sum, when equalized, by the board, with other property.

6. While it is true that the statute must be understood as applying only to such property of railroad corporations, operating in this and other States, on the same line of road, as is subject to taxation in this State, the fact that the value of the whole property, both in and without the State, is used in the computation by which to arrive at the value of that part thereof to be assessed here for taxation, will not render the assessment or the taxes levied thereon invalid.

APPEAL from the Circuit Court of Clay county; the Hon. JAMES C. ALLEN, Judge, presiding.

This was a suit instituted by the Ohio and Mississippi Railway Company, to restrain the collection of the taxes extended on the capital stock of said company, in 1875. This company was organized under the laws of Illinois, and was consolidated with two other corporations of the same name, organized, respectively, under the laws of Indiana and Ohio, to operate a line of railroad from East St. Louis, in Illinois, to Cincinnati, Ohio, with a branch road from North Vernon, Indiana, to Louisville, Kentucky. In January, 1875, the company also became the owner of the Springfield and Illinois South-

eastern Railroad, extending from Beardstown to Shawnee-town, in this State.

The value of capital stock of the consolidated company was $24,030,000, and the value of its indebtedness (exclusive of that incurred for current expenses) was $13,863,000. The total value of the tangible property of the company was assessed at $1,929,411, and there was also assessed against the company, in Illinois, under the designation "capital stock," the sum of $4,012,173, which was distributed to the several counties, as directed by the statute, and upon which taxes were extended. The length of the Ohio and Mississippi Railway, in Illinois, was 146 miles and 1678 feet; the length of the Springfield and Illinois Southeastern Railroad, was 220 miles; and the length of the Ohio and Mississippi Railway, outside of Illinois, was 244½ miles, making a total mileage of a fraction over 610 miles, of which 366 were in Illinois.

The complainant's bill questions the validity of this assessment of capital stock, for the reason, as it alleges, that the Ohio and Mississippi Railway Company was not a corporation created under the laws of this State, within the meaning of section 3, of the revenue law. (Rev. Stat. 1874, p. 858.) It is also claimed that the Board of Equalization arrived at this assessment by apportioning the whole amount of the consolidated stock ($24,030,000), and the whole amount of the consolidated debt ($13,863,000), according to the mileage of the road operated by the company, that is, it divided those respective amounts by 610, and multiplied the quotients by 366, and the amounts of capital stock and debt thus apportioned to Illinois, were then assessed and equalized with the other State assessments, by deducting fifty per cent, and the value fixed at $5,942,244, from which was deducted $1,929,711, as the assessed value of the tangible property of the company, leaving $4,012,533, and by reason of this manner of making the assessment, complainant contends it is void.

Upon the filing of the bill, the court below granted a temporary injunction, but, upon final hearing, entered a decree,

dissolving the injunction and dismissing the bill, from which the complainant has prosecuted this appeal to this court.

Mr. Charles A. Beecher, and Mr. Garland Pollard, for the appellant.

Mr. James K. Edsall, Attorney General, for the appellee.

Mr. Justice Dickey delivered the opinion of the Court:

Where a corporation is formed under our laws by consolidation of other corporations, (which are merged into the new corporation thus formed,) and where one of the constituent companies was incorporated under the laws of this State, the new corporation thus formed is to be considered as one of the "companies incorporated under the laws of this State," within the terms and meaning of the last clause of the first section of the Revenue act of March 30, 1872; and the capital stock (located or used in this State) of such corporation is subject to be assessed and taxed as such. There can be no distinction in principle between the status of such corporation and that of a corporation operating its business in two adjoining States, having a charter for such purpose from each of such States, and that has been decided to be the law applicable to the latter class of companies. *Quincy Bridge Co.* v. *County of Adams,* 88 Ill. 615.

The corporation in the case at bar owns and operates a railroad extending from East St. Louis through Illinois, Indiana, to Cincinnati, in the State of Ohio, with a branch from a point in Indiana extending to Louisville, in the State of Kentucky; and also owns and operates a connecting road lying entirely in the State of Illinois, and extending from Beardstown, on the Illinois river, to Shawneetown, on the Ohio river.

This corporation was formed by the consolidation of a corporation of the same name (created under a statute of this State) with other railroad companies of other States. This consolidation was accomplished by virtue and authority of a

statute of this State providing that this might be done. It is not perceived that this corporation thus formed is any the less, in substance and effect, a corporation "created under the laws of this State" than would have been the constituent company of this State in case that corporation, under powers granted by this State, had purchased the lines of railroad outside of this State, by permission of the States in which they lie, and was operating the same. In our view, this consolidated corporation is one corporation, having franchises from several States, and in its relation to Illinois, must be considered as having a franchise from the State of Illinois, enabling it to transact business in Illinois, and elsewhere by permission of the governing power where it so does.

It is charged by appellants that the assessment of the capital stock of this corporation is not a valid assessment, and was made by the Board of Equalization illegally and fraudulently.

The mode of finding the value of the capital stock to be taxed in Illinois, was to take the value of the entire capital stock of this corporation, and adopting that amount thereof which should bear to the value of the entire capital stock the same proportion as the length of that part of the line lying in Illinois bears to the entire length of the whole line of railroad owned and operated by this corporation.

It is also claimed that the mode of ascertaining the value of that part of the "rolling stock" subject to taxation in Illinois was illegal and void. The mode adopted in that regard was to take the value of all the "rolling stock" of this corporation, and set apart, as a proper value of that part thereof to be taxed in Illinois, so much of the value of all the rolling stock as should bear the same proportion to the value of all the rolling stock as the length of that part of the main lines located in the State of Illinois bore to the entire length of the entire lines belonging to this company.

Under our laws, for the purpose of assessment as a basis for taxation, the property of railroad companies is classified

by the statute, and specific names are adopted to designate in a word all the property embraced in each class.

To avoid confusion, it is important to keep in mind the exact meaning of each of these names.

The term "capital stock" means all the property and rights of the corporation of every kind and nature whereever located.

The term "railroad track" embraces property held for right of way, including superstructures thereon, and this is declared to be "real estate for purposes of taxation."

"Rolling stock" embraces the *movable* property belonging to the corporation, and is declared personal property, for the purposes of taxation. By movable property is plainly meant such property as in its ordinary use is taken from one part of the line to another, such as cars, locomotives and their attachments and usual accompaniments.

"Personal property other than rolling stock" embraces tools, materials for repairs, and all other property which, in its *ordinary* use, is not taken from one part of the line to another. This, with lands not being part of the "railroad track," constitutes local property.

The local property—the "railroad track and rolling stock"—constitute the tangible property of the corporation, and all other kinds of property, (embracing the franchise of the corporation and such other values as are inaccessible to the local assessor,) belonging to the corporation, constitute the intangible property, and all these combined constitute the capital stock.

For purposes of assessment for taxation, each railroad company is required by law to furnish to the county clerk of each county, annually, a statement showing:

1st. Its "railroad track," giving the length of its main and all side and second tracks and turn-outs, in such county, and in each town, village and city in such county, and giving the length of the main track on which the rolling stock is

used in the State, and the length of the main track on which it is used elsewhere.

The lands and personal property of railroad companies, other than "railroad track" and rolling stock, found in each county, is assessed by the local assessors as the property of other persons is assessed, and returned to the county clerk.

Each railroad company is also required by law to furnish annually, to the Auditor of the State, a statement embracing—

1st. Its "railroad track,"—giving the length of the main and side or second tracks and turn-outs, and the proportions in each county, and total in the State.

2d. Its "rolling stock,"—giving the length of the *main track* in each county, the total in *this* State, and the *entire length* of the road; stating the number of ties in track per mile, the weight of iron or steel, per yard, used in main and side tracks; what joints or chairs are used in tracks; the ballasting, whether gravel or dirt; the number and quality of buildings and structures on "railroad track;" the length of time iron in track has been used, and the length of time the road has been built.

3d. A schedule showing the amount of capital stock authorized, and the number of shares of stock; the amount of capital stock paid up; the value of the shares of stock, and the total amount of all indebtedness, (except current expenses,) and the total listed valuation of all its tangible property in *this* State.

The county clerk is also required to transmit to the Auditor of State an abstract of the assessment of property in his county which (in so far as relates to railroad companies) embraces the tangible property of each railroad company located or found in such county—that is, its "railroad track," lands, lots, and personal property other than "rolling stock," and the value of the lands, lots, and personal property other than "rolling stock," as returned by the local assessors, and the value of the "railroad track" as returned to the clerk by the railroad company.

29—96 ILL.

The State Board of Equalization, under our laws, is furnished with the information contained in the returns thus made by the county clerks of the several counties in this State in which any part of line of any railroad is located, and also with the information contained in the return made by the railroad company to the Auditor.

The board then is required to assess the "railroad track" and "rolling stock" of each railroad company, with power to examine persons and papers.

It is also its duty to equalize the assessment of "local property" of such companies as it equalizes the value of other property assessed in the different counties by the local assessors, and as reported to the Auditor.

It was also the duty of this board to so value the "capital stock" of each corporation as to determine the fair cash value thereof in excess of the assessed value of the tangible property of such company, and to that end to adopt such rules and *principles* as might seem just and equitable.

The plain object of all this legislation was, and is, to subject each railroad company in this State to taxation in proportion to the value of all of its property subject to taxation in this State, whether tangible or intangible, real, personal, or mixed,—embracing, among other kinds of property, the franchises exercised within or granted by this State.

To this end the State Board of Equalization adopted a rule for the assessment of the capital stock of corporations, providing in substance, that the value of all the shares of the stock, and the value of all the debt, (excluding debt for current expenses,) be added together, to ascertain the fair cash value of the "capital stock," or entire property, (including franchise,) of the corporation, and from this sum there be deducted the amount of the value of all tangible property of the corporation, and that the remainder, if any, should be taken as the fair cash value of the "capital stock" which the board is required to assess; that being "the fair cash value"

of such "capital stock" over and above (in excess of) "the assessed value of the tangible property of such company."

It is insisted this rule is inapplicable to a railroad company whose property is in the condition in which that of this corporation really is.

It is also claimed that the board have assessed in part the value of the franchises of this corporation derived from other States, and also in part the "rolling stock" of this corporation situate in other States, and which has never been used in this State; and also have assessed in part real property of the corporation located in other States, and not subject to taxation here; that this is jurisdictional, and therefore the action of the board was void, and for want of a valid assessment, the tax upon the "rolling stock" and capital stock is void.

These positions, we think, are not sustained by the facts in the record.

While the statute, in terms, does not expressly exclude from its operation property which is not within the power of the State to tax, it must be understood as applying only to such property as is subject to taxation by this State; and while the rule does not in terms confine its operation to such property only, it must be so construed.

Nor does the record show that the board attempted to apply its rule to any property of any kind not subject to assessment and taxation in Illinois.

The tangible property of this corporation, subject to taxation here, embraced the local property, real and personal, assessed in the several counties, and such "rolling stock" as was owned by the corporation, and used in Illinois.

It can not be questioned that this corporation has such a *situs* in Illinois as to subject it to taxation as a resident.

The local property was assessed by the assessors; that assessment as equalized by the county board, and reported to the Auditor, was again adjusted, and its final value thus fixed

by the State Board of Equalization, and constituted one factor in this estimate.

The next duty of the board was to value the "rolling stock" of this corporation, subject to taxation in this State. How was that value to be ascertained? The law says, by the judgment of the board. The return of the railroad company showed in what this part of the rolling stock consisted. From their knowledge of such affairs, or from information from some other source, it seems that they believed that such value would bear about the same relation to the value of all the rolling stock of the corporation, as the length of the main tracks in Illinois bear to the length of all the main tracks. What proofs they had to lead them to this conclusion, this record does not fully show. It surely does not show that this judgment was so glaringly wrong as to indicate any fraud or illegality in the action of the board.

They had the suggestion from the legislature on a like question. It is plainly the intention of the revenue law, to subject a fair and proper proportion of the value of movable railroad property to local taxation, along its line; and it is provided by statute, that the value of the entire "railroad track" in the State shall be distributed, for local taxation, to each county, "in proportion to the length of the main track in such county;" and in another section, that the value of the "rolling stock" shall also be distributed in the several counties "in the proportion that the length of the main track used in such county" * * * "bears to the whole length of the road." And in the same section, it is required that the list of property to be furnished by the corporation to the county clerk, of the "rolling stock," shall set forth the length of the main track used, not only in such county, but also "in the State," and also the number of miles of main track used *elsewhere.*

It surely can not be inferred that the State Board of Equalization acted corruptly, merely from the fact that they came to a conclusion (the same with that suggested by the General

Assembly), that generally a fair distribution for taxation of the value of rolling stock, was in proportion to the mileage of the corporation lying in the district for which the taxes were to be levied.

In the absence of proof to the contrary, the conclusion seems very reasonable. True, it will probably never prove mathematically accurate, but may, for aught that appears, be, as a general rule, a reasonable approximation to accuracy.

Having thus ascertained the value of the tangible property of the corporation, embracing the value of the "railroad track" in Illinois, and the value of the "rolling stock" subject to tax in Illinois, and the value of the local property assessed by the local assessors, it became necessary to ascertain the value of so much of the "capital stock" as the board was required to assess as capital stock.

It must be remembered that capital stock here means, all property and rights having value owned by the corporation, wherever located. This was readily ascertained by adding the amount of the value of all the shares of stock owned by its stockholders, to the amount of value of all its fixed indebtedness. Part, only, of all this property, of every kind, belonged in Illinois, and that, only, the board wished to value. In their judgment, they determined that the value of that part of all the property of this corporation pertaining to Illinois, as compared with the value of the whole, was in proportion to the length of the main track in Illinois, as compared with the length of all the lines.

Having ascertained, in accordance with their rule, the value of all the property, of every kind, belonging to this corporation, everywhere, and having concluded, by the exercise of their judgment, that the relative value of all the property of this corporation in Illinois (embracing its franchise in Illinois), when compared with the value of its entire property, of every kind, everywhere, would be in proportion with the mileage of the main track in Illinois, as compared with the mileage of all the main track everywhere, its value was

accordingly fixed, by computation, on that basis.. Having thus ascertained the fair cash value of all the property of this company, in Illinois, the portion thereof to be taxed as "capital stock" was acertained by deducting therefrom the total value of all the tangible property of the company, in Illinois, and the remainder was assessed as such.

This was not an assessment of any part of the property in other States. It is true, the value of the whole property, everywhere, is used in the computation by which the value of that part to be assessed was fixed. So, by the rule, the value of shares, the property of stockholders, and the value of debts, the property of creditors, are used in the computation in fixing the value of the entire capital stock, or property, of every kind, of a corporation whose operations are all in Illinois; but this court has repeatedly held that *that* is not an assessment of the shares or of the debts, and that the tax on such·assessment is not a tax upon the shares, which are the property of the stockholders; or a tax upon the debts, which are the property of creditors.

We find no sufficient ground for holding this assessment invalid, and the decree of the circuit court must be affirmed.

*Decree affirmed.*