GREAT NORTHERN RY. CO., RESPONDENT, *v.* FLATHEAD
COUNTY ET AL., APPELLANTS.

(Nos. 4,530, 4,531.)

(Submitted October 26, 1921.   Decided November 14, 1921.)

[202 Pac. 198.]

*Taxation—Railroads — Snowsheds — Equipment of Boarding-cars—Assessable by State Board of Equalization.*

Taxation—Railroad Snowsheds—Assessable by State Board of Equalization.
   1.  Snowsheds constructed of reinforced concrete and steel, with timber roofs, the walls of which on the mountain-side of the track were imbedded in the ground four feet or more, the outer walls consisting of a series of piers grounded in holes from a foot to twelve feet deep, *held* part of defendant railway company's roadbed, and as such assessable, under section 16, Article XII, Constitution, by the state board of equalization and not by the county assessor.
Same—Cooking Utensils on Construction Boarding-cars Assessable by State Board of Equalization.
   2.  Cooking utensils forming a necessary and usual equipment of cars used for boarding railway construction crews are part of its rolling stock and as such subject to assessment for taxation by the state board of equalization only.

*Appeal from District Court, Flathead County; T. A. Thompson, Judge.*

SEPARATE ACTIONS by the Great Northern Railway Company against Flathead County and another, tried together by stipulation.   Judgment for plaintiff and defendants appeal. Affirmed.

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assistant Attorney General, and *Mr. T. H. MacDonald,* for Appellants, submitted a brief; *Mr. L. A. Foot,* Assistant Attorney General, argued the cause orally.

Two Code sections are involved in the decision of this case: Section 2557: "The state board of equalization must assess the franchise, roadway, roadbed, and rolling-stock of all railroads operated in more than one county," and section 2511, subdivision 7, directing the county assessor to require from each person a statement of "All depots, shops, stations,

buildings, and other structures erected on the space covered by the right of way, and all other property owned by any person, corporation, or association of persons owning or operating any railroad within the county."

The latter section is the rule and the former the exception. (See *Northern Pac. Ry. Co.* v. *Brogan*, 52 Mont. 463, 158 Pac. 820.) "An exception to a rule cannot be enlarged beyond what the plain language imports." (*State* v. *Clemens*, 40 Mont. 567, 107 Pac. 896.)

"It is well settled that an exception in the statute amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions." (25 R. C. L. 983; *Bend* v. *Hoyt*, 13 Pet. 263, 10 L. Ed. 154 [see, also, Rose's U. S. Notes]; *Arnold* v. *United States*, 147 U. S. 494, 37 L. Ed. 253, 13 Sup. Ct. Rep. 406; *Lima* v. *Lima Cemetery Assn.*, 42 Ohio St. 128, 51 Am. Rep. 809; *Olive Cemetery Co.* v. *Philadelphia*, 93 Pa. St. 129, 39 Am. Rep. 732; *State* v. *Peet*, 80 Vt. 449, 130 Am. St. Rep. 998, 14 L. R. A. (n. s.) 677, 68 Atl. 661; *Meyer* v. *State*, 134 Wis. 156, 14 L. R. A. (n. s.) 1061, 114 N. W. 501.)

Our statute was taken from California, and construed in *San Francisco & S. J. V. Ry. Co.* v. *City of Stockton*, 149 Cal. 87, 84 Pac. 775.)

The facts of the case are the snowshed in question is anchored on one side into the solid rock of the foundation, on the outside it goes down to the solid rock of the roadway; between these two walls are two lines of tracks, and between the two tracks and going down to solid ground are the supporting posts of the roof. The entire weight of the structure rests on the inside retaining wall, which goes down the solid rock and is anchored to the mountain-side. This clearly cannot be a part of the roadbed. (*Chicago, M. & St. Paul Ry.* v. *Murray*, 55 Mont. 162, 174 Pac. 704.)

With respect to the utensils: there is no law which we can find on that subject. The case is one of first impression and the foregoing largely applies to them.

*Mr. I. Parker Veazey, Jr.,* and *Messrs. Noffsinger & Walchli,* for Respondent, submitted a brief; *Mr. Veazey* argued the cause orally.

The present litigation arose prior to the decisions in the cases of *Chicago, M. & St. P. Ry. Co.* v. *Murray,* 55 Mont. 162, 174 Pac. 704, and *Northern Pac. Ry. Co.* v. *Dixson,* 55 Mont. 171, 174 Pac. 706, and they are controlling here. They are direct decisions that snowsheds or any other structures permanently affixed to the roadbed, as distinguished from the roadway, are part of the roadbed. No further review of the authorities is necessary, but we cite the following cases on the general subject of railroad assessment: 2 Elliott on Railroads, 2d ed., sec. 738; *Chicago, M. & St. P. Ry. Co.* v. *Cass County,* 8 N. D. 18, 76 N. W. 239; *Minneapolis, St. P. & S. S. M. Ry. Co.* v. *Oppegard,* 18 N. D. 1, 118 N. W. 831; *People ex rel. Dunn* v. *Atchison, T. & S. F. Ry. Co.,* 206 Ill. 252, 68 N. E. 1059; *People ex rel. Anton* v. *Atchison, T. & S. F. Ry. Co.,* 225 Ill. 593, 80 N. E. 273; *Nashville etc. R. R. Co.* v. *Patterson,* 122 Tenn. 1, 122 S. W. 467; *St. Louis S. W. Ry. Co.* v. *Grayson,* 72 Ark. 119, 78 S. W. 777; *Chicago etc. Ry. Co.* v. *Webster County,* 101 Neb. 311, 163 N. W. 316; *Chicago, B. & Q. Ry. Co.* v. *Richardson County,* 61 Neb. 519, 85 N. W. 532; 26 R. C. L. 270–272; 37 Cyc. 842, 844, 1041–1043. Rolling stock has been specifically held ·to include the equipment and appliances of the car. (34 Cyc. 815; *Ohio & N. R. Co.* v. *Webber,* 96 Ill. 443; *Union Pac. Ry. Co.* v. *Cheyenne,* 113 U. S. 516, 28 L. Ed. 1098, 5 Sup. Ct. Rep. 601.)

MR. COMMISSIONER JACKSON prepared the opinion for the court.

Great Northern Railway Company instituted two actions against Flathead county and J. W. Walker, county treasurer, to recover taxes paid under protest, which were assessed by the county assessor against certain snowsheds over its tracks

in Flathead County, and certain cooking utensils used on boarding-cars to serve its construction crews. One action was for the taxes so paid in 1917, and the other for those paid in 1918. The two actions, by stipulation, were tried together, come to this court together on appeal, and will both be disposed of in this opinion.

Plaintiff contends that the snowsheds are part and parcel of the roadbed and as such cannot be subject to local county assessment, but that they must .be assessed by the state board of equalization. With respect to the cooking utensils, plaintiff holds that they are included in the term "rolling stock" and are subject to assessment in the .same manner by the state board. Plaintiff also avers that, since both the roadbed and rolling stock had already been assessed by the state board and the taxes paid, the assessment and taxes sought thereon by the county assessor double the taxes on the same property. The defendants argue that the snowsheds are not included in the word "roadbed," but are to be considered as structures erected on the right of way and therefore subject to local assessment, and that cooking utensils on the boarding-cars come under the head of property properly assessable by the county assessor.

The issues were tried to the court without a jury, and judgment was had for the plaintiff in both cases. Defendants appeal from the judgments.

The record shows that the Great Northern Railway on its [1] main line, along the mountain side between Summit, Montana, and Essex, Montana, constructed snowsheds made of concrete, steel and timber, to guard against slides of snow and debris coming on the tracks. From Summit to Java, a station more than halfway to Essex, the tracks are double. The sheds are built by excavating a trench on the mountainside of the track, four feet deep, or deeper, and cutting out the mountain wall four feet wide at the bottom. This trench is then filled with reinforced concrete and the concrete formation is continued vertically above the trench and into

the face of the mountain wall for a distance of thirty-three feet and laterally to the natural wall of the mountain. As the result, in place of the old irregular natural wall of the mountain which has been cut away, man has faced the irregular natural wall with concrete, so that it now consists of a smooth, perpendicular, artificial wall, extending thirty-three feet above the rail and four feet or deeper below the rail; the concrete face varying in thickness and being flush with the mountain and being embedded in the mountain with mushroom anchors at twenty-foot intervals. This is the mountain-side supporting wall. The outer wall consists of pillars beyond the outer rail. Sometimes a series of piers, especially where there is a double track, runs halfway between the two tracks. These piers "are embedded in a hole in the ground, one between the tracks and the other outside the tracks, and they vary in depth from a foot to as much as twelve feet deep. A hole has to be excavated for them to find solid ground in order that they will carry the weight of the roof. This is in the roadbed." Over these two walls a timber roof is constructed and supported by them. The sheds are necessary, permanent, and their removal means their destruction.

Article XII, section 16, of the state Constitution, reads, in part: "All property shall be assessed in the manner prescribed by law except as is otherwise provided in the Constitution. The franchise, roadway, roadbed, rails and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization." This method of assessment is also contained in section 2508, Revised Codes. Under subdivision 7 of section 2511, Revised Codes, the county assessor is directed to require a statement under oath of "all depots, * * * stations, buildings and other structures erected on the space covered by the right of way and all other property owned by any person, corporation or association of persons owning or operating any railroad within the county." The taxing of the snowsheds, therefore,

comes either under subdivision 7, section 2511, or under the exception set forth in the Constitution.

The Great Northern Railway operates in many counties of the state of Montana, and, if these snowsheds are included in the meaning of the word "roadbed," they are clearly to be subject to assessment and taxation under the exception to the rule, set forth in the Constitution. Fortunately, the word "roadbed" has been defined by this court as follows: "The roadbed is that part of the right of way especially prepared for the emplacement of ties, rails and other necessary superstructures, and to which the ties, rails, and other necessary superstructures are affixed." (*Chicago, M. & St. P. Ry.* v. *Murray,* 55 Mont. 162, 174 Pac. 704, 705.) Under this definition, it is any and all parts of the right of way especially prepared, under the tracks, over the tracks, and coterminous with the limits of the right of way, if required for the emplacement of necessary structures forming an integral part of the continuous railroad property.

The fact that the two outer walls of the sheds necessarily are on the outside of and adjacent to the very ground upon which the ties are laid cannot by the most far-fetched subtleties of reason be considered as placing them outside of the roadbed if that ground is a part of the right of way especially prepared, not only for rails and ties, but for the emplacement of a necessary structure and a superstructure is affixed to it. "Structures affixed to realty are part of the realty to which they are affixed." (*Chicago, M. & St. P. Ry.* v. *Murray, supra; Northern Pacific Ry. Co.* v. *Dixson,* 55 Mont. 171, 174 Pac. 706.)

Unquestionably the snowsheds are part of the roadbed, and under Article XII, section 16, of the Montana Constitution, are not assessable by the county assessor, but must be assessed by the state board of equalization.

Defendants have failed to pursue their contention in [2] reference to the cooking utensils, save to state that there is no law on the subject and the case is one of first impression.

This situation, under too many decisions of this court to

require citation, should be deemed abandoned.   However, it is a matter of ordinary judgment that no car has any value to a railroad, stripped of its equipment, and the same reason for assessment by the state board of equalization of the car itself applies to this equipment.   As contended by counsel for plaintiff, the property is transitory and is not justly assessable at any one place where it simply happens to be on the first Monday in March, at the expense of any other place where it is also used; and this also avoids double taxation, in that the statutes of one state might fix the tax date as the first Monday in March, and another state the first Monday in April, and another the first Monday in May, *etc.*   The just method is to value the cars and their equipment, running, as both do, all over the country, as a part of the operating unit.   No different rule can be applied to a boarding-car for employees than is applied to a boarding-car for passengers, such as a dining-car, or to a bunk-car for employees than is applied to a sleeping-car for passengers.

"Rolling stock" is defined in 34 Cyc. 815 to be "movable property belonging to a railroad company."   From the case of *Ohio & M. R. Co.* v. *Webber,* 96 Ill. 443, and cited by plaintiff, is the following: "The rolling stock of a railroad company embraces the movable property belonging to the corporation by which is plainly meant such property as in its ordinary use is taken from one part of the line to another, such as cars, locomotives, and their attachments and usual accompaniments."

Cooking utensils are a necessary and usual accompaniment of the boarding-car and as such a part of the rolling stock, and being thus included, are subject to no assessment save that by the state board of equalization.

For the reasons herein stated, we recommend that the judgments appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgments appealed from are affirmed.

*Affirmed.*