**BURLINGTON NORTHERN RAILROAD COMPANY, Appellant (Petitioner),**

v.

**WYOMING STATE BOARD OF EQUALIZATION, Appellee (Respondent).**

No. 90–104.

Supreme Court of Wyoming.

Nov. 25, 1991.

John A. Sundahl of Godfrey & Sundahl, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., and Michael L. Hubbard, Sr. Asst. Atty. Gen., for appellee.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and LANGDON, District Judge.

## OPINION

MACY, Justice.

This is an appeal from an order affirming Appellee Wyoming State Board of Equalization's decision to impose a use tax assessed by the Wyoming Department of Revenue and Taxation against Appellant Burlington Northern Railroad Company upon component parts of wheel assemblies placed on its railroad cars in Wyoming.

We reverse.

The issues propounded on appeal by Burlington Northern are:

1. Whether the use tax imposed by Wyoming on refurbished wheel assemblies installed on interstate railroads meets the four-prong test of *Complete Auto Transit, Inc., v. Brady*, 430 U.S. 274?

2. If there is a taxable event and the tax is otherwise due, is the tax exempt by virtue of W.S. 39–6–505(a)(x) (1977), otherwise known as the "rolling stock" exemption[?]

---

1. Wyo.Stat. § 39–6–505(a)(x) (Supp.1987) provided:

(a) The following purchases or leases are exempt from the excise tax imposed by this article:

. . . .

(x) Rolling stock including locomotives purchased by interstate railroads, aircraft purchased by interstate air carriers and trucks and trailers purchased by interstate carriers

Burlington Northern was an interstate carrier utilizing railroad locomotives and cars which were substantially used in interstate commerce. All Burlington Northern trains which traveled through Guernsey, Wyoming, were inspected. If the inspection revealed a wheel assembly needed to be repaired, the wheel assembly was removed from the railroad car, shipped to Havelock, Nebraska, and rebuilt with new or used parts. Burlington Northern purchased the new parts from manufacturers in states which had sales and use tax exemptions for such parts. These new parts were received and stored in Havelock until they were used to repair the wheel assemblies. The repaired wheel assemblies were returned to Guernsey and placed on the cars as soon as the manpower was available to do so.

On October 21, 1987, the Wyoming Department of Revenue and Taxation issued two tax deficiency assessments totaling $735,106.90 to Burlington Northern. Burlington Northern paid $315,369.67 but challenged the remaining portion, contending that Burlington Northern was exempt from use tax on repair parts for rolling stock, and appealed to the Board of Equalization.[1] After the Board of Equalization held a hearing, it issued its decision on August 3, 1989, which reduced the use tax assessments on the wheel assemblies attributable to labor, overhead, and secondhand materials but otherwise affirmed the use tax, after finding:

[U]nder the particular facts herein, there is a taxable event within the jurisdiction of the State of Wyoming, and thus, the imposition of use tax on the repair parts at the Guernsey, Wyoming, facility is appropriate.

. . . .

which are holders of valid United States interstate commerce commission or civil aeronautics board permits or authorities or which are operating in interstate commerce under exemption clauses in federal law if they are to be substantially used in interstate commerce[.]

(Amended by 1988 Wyo.Sess.Laws ch. 67, § 2 effective March 15, 1988, and by 1991 Wyo.Sess. Laws ch. 251, § 1 effective March 9, 1991.)

... [T]he exemption provided by W.S. 39–6–505(a)(x) is inapplicable, and the imposition of use tax on the new items is proper. Any amounts attributable however to labor, overhead, and secondhand parts should not be assessed.

On September 5, 1989, Burlington Northern filed its petition for review in the district court. On March 20, 1990, the district court affirmed the Board of Equalization's decision. It is from that order that this appeal is taken.

Burlington Northern contends the Board of Equalization's application of the relevant law to the undisputed facts was incorrect. We will review the appeal as though it came directly from the Board of Equalization, and we will determine, in compliance with Wyo.Stat. § 16–3–114(c)(ii)(A) (Supp. 1982), whether the decision was in accordance with the law of this state. *Exxon Corporation v. Wyoming State Board of Equalization*, 783 P.2d 685 (Wyo.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990); *Department of Revenue and Taxation of State of Wyoming v. Casper Legion Baseball Club, Inc.*, 767 P.2d 608 (Wyo.1989).

In *Exxon Corporation*, this Court upheld a use tax upon pipe which, while en route to its permanent installation in a Wyoming intrastate pipeline, stopped in Colorado where it was inspected, sandblasted, and otherwise processed. We held that the "first use" of the pipe took place in Wyoming rather than in Colorado and that the tax upon the pipe satisfied the requirements of *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).[2] We stated in *Exxon Corporation*, 783 P.2d at 688:

The Wyoming use tax statutes, W.S. 39–6–501 through –518, impose an excise tax upon "persons storing, using or consuming tangible personal property" in Wyoming. W.S. 39–6–504(b). The legislature intended that the use tax be com-

plementary to the Wyoming sales tax. *Morrison–Knudson Co., Inc. v. State Board of Equalization*, 58 Wyo. 500, 135 P.2d 927, 932 (1943). *See also* Chap. IV, § 3, Rules and Regulations of the Wyoming State Tax Commission—Department of Revenue & Taxation. The use tax is applied to property purchased outside the state and brought into the state for storage, use or consumption, so as to put that property on an equal footing with property purchased within the state that is subject to the Wyoming sales tax.

The administrative rule referred to by this Court, i.e., Chapter IV, Section 3, provided:

The purchase or lease of all tangible personal property outside this state for *first use*, storage or consumption within this state, is subject to use tax, providing the same transaction would be subject to sales tax if the transaction had occurred wholly within the State of Wyoming.

*Exxon Corporation*, 783 P.2d at 688 n. 3 (emphasis in original). We also stated that, "if the first use of the property occurs in another state, Wyoming's use tax is inapplicable." *Id.* at 688.

The pivotal question to be answered by this Court in this case is whether the "first use" of the new replacement parts took place in Wyoming. If the "first use" did not occur in Wyoming, the four-part test articulated in *Complete Auto Transit, Inc.* and adopted by this Court in *Exxon Corporation* is inapplicable. The Board of Equalization concluded:

The evidence presented herein however clearly indicates the new parts purchased for inclusion in the wheel assemblies have their "first use" at the Guernsey facility when they are placed on locomotives or cars, the ultimate use for which their purchase was intended. The mere integration of various parts into a whole at the Havelock facility is not the type of

---

**2.** In *Complete Auto Transit, Inc.*, the United States Supreme Court articulated a four-prong test for analyzing whether a particular state tax can be upheld under the commerce clause. A tax will survive a commerce clause challenge "when the tax [ (1) ] is applied to an activity

with a substantial nexus with the taxing State, [ (2) ] is fairly apportioned, [ (3) ] does not discriminate against interstate commerce, and [ (4) ] is fairly related to the services provided by the State." 430 U.S. at 279, 97 S.Ct. at 1079.

"first use" that either the Wyoming statutes or regulations anticipate.

The Board of Equalization also concluded that, had the purchase of the new repair parts occurred wholly within Wyoming, the transaction would have been subject to Wyoming sales tax.

Burlington Northern contends that the "first use" took place in Havelock, Nebraska, where the parts were used to rebuild the wheel assemblies which belonged to, and never left the possession of, Burlington Northern. Burlington Northern contrasts this scenario with *Exxon Corporation*, where the pipe was sold to Exxon for exclusive use and operation in Wyoming.

The Board of Equalization has submitted a well reasoned and persuasive brief supporting its contention that the "first use" took place in Wyoming. We are convinced, however, that the "first use" of the new repair parts took place in Nebraska when they were installed as component parts in Burlington Northern's wheel assemblies. The mere replacement in Guernsey of repaired wheel assemblies on Burlington Northern's cars used in interstate commerce is not a "first use" which would trigger the application of the *Complete Auto Transit, Inc.* test.

In view of the above, we hold that the decision of the Board of Equalization to impose a use tax on the new parts used to repair Burlington Northern's wheel assemblies was not in accordance with the law of this state, and we, therefore, reverse such decision.

This Court's holding on the first issue being dispositive of the second issue presented by Burlington Northern, it is not necessary or appropriate for us to determine whether the rolling stock exemption would have applied had there been a taxable event.

Reversed.

THOMAS, Justice, concurring specially.

I agree with the majority position in this case that the first use of the wheel assemblies did not occur in Wyoming. In reversing the judgment of the trial court, I would invoke an additional rationale to that articulated in the opinion of the court. The majority opinion does not address the availability of the rolling stock exemption. Yet, the end result is that these wheel assemblies are not subject to use tax in Wyoming. That result, of course, avoids any question as to whether there is a state tax burden upon interstate commerce.

I am disposed to approach the issue more directly. I would invoke the exemption from excise tax for "rolling stock" articulated in Section 39–6–505(a)(x), W.S.1977. In my view, the wheel assemblies appropriately are part of the railroad car that, I assume, even the Wyoming State Board of Equalization would agree is rolling stock. In this context, I cannot agree with the concept that somehow or other the whole of the railroad car is greater than the sum of all of its parts and, in my opinion, the several parts of that railroad car cannot avoid being identified as "rolling stock."

A simple illustration explains my position. I am satisfied that, if Burlington Northern Railroad Company shipped into Wyoming via motor carrier all of the component parts of a railroad car and then assembled those parts on railroad trackage in Wyoming, the railroad car would be rolling stock. My intent is to make it entirely clear that the first use of the railroad car would have to occur in Wyoming, but the express statutory exemption would serve to insulate it from the use tax. Logic persuades me that the installation of a wheel assembly on a freight car that is otherwise exempt from taxation cannot produce a taxable event in Wyoming without infringing upon interstate commerce.

I find persuasive authority from other jurisdictions that supports this conclusion recognizing that, in each instance, there may be some difference with respect to statutory language or administrative rules. To the extent that those differences exist, I am satisfied that the legislative or executive branches of government in those other states were sensitive to a potential constitutional concern and wisely adopted the statute or the rules to lead to the appropri-

ate result of exempting rolling stock from the application of excise tax.

In *Burlington Northern, Inc. v. Department of Revenue*, 32 Ill.App.3d 166, 336 N.E.2d 170 (1975), the Illinois Court of Appeals recognized that diesel switching engines, passenger commuter cars, and shipping containers and tractor trailers, all came within a "rolling stock" exemption provided in the Illinois statutes. The court rejected an argument by the Illinois Department of Revenue that the appropriate exemption was the one providing the credit for use tax paid in another state. It held that, contrary to the argument by the taxing authority, the appropriate exemption to look to was the "rolling stock" exemption in the statute and that it did reach the several items of property in issue.

By contrast, in *LeTourneau R.R. Services, Inc. v. Dept. of Revenue*, 134 Ill.App.3d 638, 90 Ill.Dec. 64, 481 N.E.2d 864 (1985), the Illinois Court of Appeals recognized that equipment that had the function of loading and unloading containerized freight from rail cars was not "rolling stock" within the purview of the statutory exemption. In that case, the court made a point of noting the difference between equipment that travels on railroad tracks and equipment that does not. Even though there exists specific authority in a tax regulation in Illinois, I am persuaded that there is no question that the wheel assemblies would be "rolling stock" in Illinois.

In Missouri, the director of revenue assessed a use tax on certain flanged wheel equipment which was intended for the purpose of roadway and work equipment. The Supreme Court of Missouri looked at an exemption from state and local sales and use tax for " '[r]ailroad rolling stock for use in transporting persons or property in interstate commerce * * *.' " *Burlington Northern Railroad v. Director of Revenue*, 785 S.W.2d 272, 273 (Mo.1990). That court noted the restrictive construction given for tax exemption provisions but, invoking the rule of statutory construction that words are to be given their plain and ordinary meaning, it held that this equipment, used in constructing and maintaining rail-

road tracks and railways, came within the rolling stock exemption. *Burlington, supra.* Other cases cited by Burlington Northern in its brief would be consistent with those discussed above. *See Ohio and Mississippi Railroad Company v. Weber*, 96 Ill. 443 (1880). *Cf. Duval Sierrita Corp. v. Arizona Department of Revenue*, 116 Ariz. 200, 568 P.2d 1098 (1977); *United Parcel Service, Inc. v. Comptroller of Treasury*, 69 Md.App. 458, 518 A.2d 164 (1986); *Tulsa Machinery Company v. Oklahoma Tax Commission*, 208 Okl. 138, 253 P.2d 1067 (1953). I note that I would have great difficulty stretching this exemption as far as the Supreme Court of Montana did when it indicated that cooking utensils used by railroad employees on a boarding car was a "necessary and usual accompaniment" and, therefore, part of the rolling stock of the railroad. *See Great Northern Railway Co. v. Flathead County*, 61 Mont. 263, 202 P. 198 (1921).

Since I am satisfied that the Wyoming Board of Equalization, as a matter of law, erroneously failed to give to Burlington Northern Railroad Company the benefit of exemption from excise tax for "rolling stock," I would reverse the judgment of the district court. I am satisfied that this approach is an appropriate ground for deciding this case, and it would not be necessary for me to discuss whether the first use of the property occurred within the state of Wyoming. In my view, the exemption for rolling stock reaches all rolling stock and applies wherever the first use might have occurred. I do agree that in this instance, however, the first use occurred in some jurisdiction other than Wyoming.

CARDINE, Justice, dissenting, with whom GOLDEN, Justice, joins.

I would affirm.

The critical question is whether new or used parts are first used when the wheel assemblies are repaired with the parts or when the wheel assemblies are used for transportation in the railroad transporta-

tion business. I am unable to distinguish *Exxon Corp. v. Wyoming State Bd. of Equalization,* 783 P.2d 685 (Wyo.1989), cert. denied —— U.S. ——, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990), where we held first use was as a pipeline rather than conditioning of the pipeline. Here, first use is for transportation rather than conditioning the wheel assembly for use in transportation.