**SAFETY MEDICAL SERVICES, INC.,**
**Appellant (Petitioner),**

v.

**EMPLOYMENT SECURITY COMMIS-**
**SION OF WYOMING, Appellee**
**(Respondent),**

**Margo Green, (Respondent).**

**No. 86–52.**

Supreme Court of Wyoming.

Sept. 5, 1986.

C. Robert Klus, Jr., Gillette, for appellant.

Karen A. Byrne, Asst. Atty. Gen., Casper, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Employer appealed to the district court from the decision of the Wyoming Employment Security Commission (Commission) to award unemployment compensation to discharged employee Margo Green, and the appeal was certified directly to this court under Rule 12.09, W.R.A.P. The employer, Safety Medical Services, Inc. (SMS), challenges the Commission's decision that Green was not discharged from employment for work-related misconduct pursuant to § 27-3-311(c), W.S.1977, and also challenges district court utilization of our administrative agency direct-certification appeal process. Finding that the administrative agency's decision was based on substantial evidence in accord with a generally established agency rule and that certification was proper, we affirm.

The issues on appeal are:

I. Did the district court abuse its discretion in certifying this case to the Wyoming Supreme Court?

II. Is the Commission's decision to award benefits unsupported by substantial evidence, and/or is the decision arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law?

The substantive issue is validity of the agency's definition of work-related misconduct and whether it was properly applied to the facts of this case, raising both rule and use legitimacy. Conversely, the principle presented is whether *unintended or accidental work rule violation* with consequent discharge constitutes statutory misconduct for denial of unemployment-benefit payment.

## FACTS

Green was employed by SMS as an emergency medical technician and security guard from July 23, 1984 to April 8, 1985. The company's basis for terminating her employment was an incident involving alleged company rule violation. That incident occurred in 1985, when Green and Nulle, a senior co-worker, reported for work at a coal mine facility where SMS provided security and medical services. They arrived at 3:30 p.m. for a shift beginning at 4:00 p.m., relieving employees on the prior shift who left early. Nulle conducted the check-out of departing mine employees, while Green left the guard shack to perform a routine ambulance inspection.

A mine employee, Ingram, entered the guard shack and told Nulle that he was going to take his (Ingram's) wife on a tour of the mine. Nulle started to assist Ingram, but Nulle became occupied with other duties. Green, who had returned to the guard shack, took over assisting Ingram. Green asked Ingram if his wife had received required safety gear, and when informed that she had not, furnished that equipment. Ingram then left the guard shack and drove with his wife up to the change house which sits on the mine site just past the guard shack. Because the vehicle they intended to use was unavailable, the Ingrams never toured the mine site but, instead, within 10 or 15 minutes left the jobsite.

After Ingram left the guard shack, Green asked Nulle if they should have logged in Mrs. Ingram. Nulle answered that he believed employee's wives were handled differently from other persons touring the mine. Because of past practices of the company, Nulle thought that employees' wives were not required to follow the same log-in procedures as others, but he was uncertain as to the correct procedures to apply in this situation. Nulle and Green then searched SMS' Policy and Procedure Manual, and the pass-along book,[1] to ascertain the log-in requirement. They did not, however, find a definitive policy regarding tours by employees' spouses.

Later, Nulle found two pass-alongs in the

1. The pass-along book was a loose-leaf binder containing a chronological compilation of company policy memoranda. The pass-along book, which is required reading for SMS employees, has since been revised to include a table of contents and a subject index.

outdated file[2] which, without specifically addressing employees' spouses, seemed to indicate that Mrs. Ingram should have been logged in. The first pass-along, dated July 3, 1984, informed employees of the new "Assumption of Risk and Waiver of Liability" clause on the back of the safety certification check list. This pass-along stated: "It is now necessary to have all visitors to the mine site flip the sheet over and *read* and *sign* the reverse of the form." (Emphasis added.) The second pass-along, dated July 11, 1984, stated: "Everyone on a tour must sign a safety certification check list and [issue] the necessary safety equipment." Nulle and Green had initialed both memoranda to show that each had read them. SMS asserts that Green's failure to log in Mrs. Ingram and obtain her signature on the liability waiver form was misconduct even though no tour of the facility ever occurred or risk of liability to the mine company was created.

The president of SMS, while reviewing the day's records, discovered the Ingrams' tour approval form, and noticed that the logs were not appropriately signed. He spoke with Nulle and put him on 90–days probation for failing to inform management of the incident. When the project site manager mentioned the incident to Green she could not recall the incident, but said that if she had done anything wrong she was sorry and would not do it again. However, two days later, Green was informed that her employment was terminated.

## ISSUE I

■ After the Commission affirmed a hearing examiner's contested trial finding that Green was eligible for unemployment benefits, SMS petitioned for judicial review by the district court, and the Commission asked the district court for certification to the Wyoming Supreme Court. Following receipt of memoranda and a hearing on that issue, the district court directly certified the case to this court, and the appeal

comes to us on the factual record developed by the hearing examiner.

SMS contends that the district court should not have certified this case to the Supreme Court because it does not present a novel legal or constitutional issue and because it requires no construction of a statute. Rule 12.09, W.R.A.P. provides in part:

"If after such review [of the record], the district court concludes the matter to be appropriate for determination by the Supreme Court, the district court may certify the case to the Supreme Court."

This rule does not require that any particular criteria be considered before certification is proper: a case need not present a novel or complex legal issue, a question of constitutionality, nor invoke construction of a statute. The rule leaves the question of certification to the trial court's discretion without reference to the criteria appellant seeks to impose. *Beddow v. Employment Security Commission of Wyoming*, Wyo., 718 P.2d 12, 13 n. 1 (1986).

This case does, however, involve construction of a statute. Section 27–3–311(c), W.S.1977, provides:

"An individual shall be disqualified from benefit entitlement and shall forfeit all accrued benefits if he was discharged from his most recent work because of misconduct connected with his work * * *."

The appeal centers around the Commission's interpretation of the word "misconduct." There are no Wyoming decisions defining misconduct for purposes of the Employment Security law. Because the Commission is in a position where it has to defend its actions in every district court in Wyoming it is desirable that this court construe the statute to provide the district courts with uniform guidance as to what constitutes misconduct. Therefore, although a question of statutory construction is not required for proper certification, the

---

2. The outdated file is a drawer where memoranda formerly in the pass-along book are kept. The memoranda are moved to the outdated file,

not because they no longer apply, but in order to make room for newly issued memoranda in the pass-along book.

existence of such a question supports the trial court's decision to certify.

■ Appellant further asserts that Rule 12.09, W.R.A.P. requires the district court to review not only the record, but also the parties' briefs in determining the appropriateness of the case for certification. Appellant's position is clearly contrary to the direct language of the rule:

"The review shall be * * * confined to the record * * * and to the issues raised before the agency."

Rule 12.09 neither requires the trial court to review the briefs nor imposes any other specific requirement for certification. The present rule and procedural system encompasses a screening process by the district court rather than the certiorari process observed by the supreme courts of many states. Any evaluative criteria would involve appellate expediency and judicial efficiency. Obviously what can be settled in the district court should be.

■ SMS argues that the Commission would not have standing to appeal an adverse decision from the district court and that therefore the Commission's request for certification to the Supreme Court is also inappropriate. SMS relies on § 16–3–115, W.S.1977 of the Wyoming Administrative Procedure Act, which provides:

"An aggrieved party may obtain a review of any final judgment of the district court under this act * * * by appeal to the supreme court."

See also Rule 12.11(a), W.R.A.P. SMS reasons that the Commission would not be an *aggrieved party* because it does not have a substantial, immediate and pecuniary interest in the case. *In the matter of Various Water Rights in Lake DeSmet v. Texaco, Inc.*, Wyo., 623 P.2d 764 (1981).

To the contrary, the Commission would have standing to appeal to the Supreme Court even if the district court originally had decided to hear the appeal and then reversed the Commission's decision on the merits. An agency adversely affected by the decision of a district court is aggrieved and is entitled to appeal to this court. An agency is also a party as that term is defined in the Wyoming Administrative Procedure Act, § 16–3–101(b)(vi), W.S.1977. SMS would have this court adopt an approach to administrative review which would make the district courts the final arbiters of decisions adverse to state agencies but would allow individuals to obtain Supreme Court review of district court decisions favorable to the agencies. This court has never ruled that an agency is not an appropriate appellant from the district court,[3] and we refuse to do so here. See *Wyoming Worker's Compensation Division v. Van Buskirk*, Wyo., 721 P.2d 570 (1986); *State v. Moncrief*, Wyo., 720 P.2d 470 (1986); *State Board of Equalization v. Tenneco Oil Co.*, Wyo., 694 P.2d 97 (1985); *Department of Revenue and Taxation v. Irvine*, Wyo., 589 P.2d 1295 (1979).

## ISSUE II

■ The scope of review of agency action is established in § 16–3–114(c), W.S. 1977:

"To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

---

3. This is not a case where an agency seeks to appeal its own decision to the district court. See *Pritchard v. State, Division of Vocational Rehabilitation, Dept. of Health and Social Ser-* *vices*, Wyo., 540 P.2d 523 (1975). Rather, appellant's argument involves an agency's standing to appeal from the district court to the Supreme Court.

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

The Supreme Court reviews agency action as though directly referred from the agency and follows the same rules of review as do the district courts. *Employment Security Commission of Wyoming v. Laramie Cabs, Inc.*, 700 P.2d 399, 403 (1985). See also *Majority of the Working Interest Owners in the Buck Draw Field Area v. Wyoming Oil and Gas Conservation Commission*, Wyo., 721 P.2d 1070 (1986); *Mountain Fuel Supply Co. v. Public Service Commission of Wyoming*, Wyo., 662 P.2d 878, 882 (1983); and *Wyoming State Department of Education v. Barber*, Wyo., 649 P.2d 681, 689 (1982).

The appeal standard invokes determination of whether the agency findings are supported by substantial evidence. *Mountain Fuel Supply Co. v. Public Service Commission of Wyoming*, supra, 662 P.2d at 882. The burden of proving a lack of substantial evidence is upon the party appealing from the agency's decision. *Id.* at 883. See also *Holding's Little America v. Board of County Commissioners of Laramie County*, Wyo., 670 P.2d 699 (1983); and *Laramie River Conservation Council v. Industrial Siting Council*, Wyo., 588 P.2d 1241 (1978).

The Commission is required to apply § 27–3–311(c), W.S.1977, which states:

**4.** Burton's Legal Thesaurus at 332 provides some 43 synonyms for misconduct, ranging from "bad conduct" to "wrongdoing." Most anything one may do can contendably fit within one of those terms.

"An individual shall be disqualified from benefit entitlement and shall forfeit all accrued benefits if he was discharged from his most recent work *for misconduct connected with his work*, fraud or receipt of disqualifying income." (Emphasis added.)

In applying its generally utilized definition of the statutorily proscribed misconduct, the Commission found that Green was not discharged for misconduct connected with her work:

" 'Misconduct under the Wyoming Employment Security Law means generally an act of an employee which indicates a disregard of (1) the employer's interests or (2) the commonly accepted duties, obligations and responsibilities of an employee. This would include carelessness or negligence of such degree or recurrence as to reveal willful intent or an intentional disregard of the employer's interests or of the employee's duties and obligations to his employer. Inefficiency or failure in good performance as the result of inability or incapacity; ordinary negligence in isolated instances or good faith errors in judgment or discretion are not deemed to be misconduct within the meaning of the Law.' "

SMS contends that the plain language of the statute is sufficient [4] and that this definition is an improper standard for determining misconduct. We disagree. The Commission's definition is in accord with definitions in other jurisdictions and expresses the plain, commonly understood meaning of the word misconduct.

This court defined misconduct of a public employee in *Matter of State Bank Charter Application of Security Bank, Buffalo*, Wyo., 606 P.2d 296, 302 (1980), stating that:

" * * * Webster defines 'misconduct' as * * * *intentional* wrongdoing; *deliberate* violation of a rule of law or standard

"One who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search. Robert Jackson, *Brown v. Allen*, 344 U.S. 443, 537 [73 S.Ct. 397, 425, 97 L.Ed. 469] 1953." Shager & Frost, The Quotable Lawyer at 221 (1986).

of behavior * * *"; malfeasance; bad conduct." (Emphasis added.)

Other courts have defined misconduct to require wrongful intent or deliberate disregard of expected standards of employee behavior. See *Williams v. District Unemployment Compensation Board,* D.C. App., 383 A.2d 345 (1978); *Molina v. Review Board of the Indiana Employment Security Division, Inc.,* 418 N.E.2d 1198 (1981); *Demech v. Board of Review, Dept. of Labor and Industry,* 167 N.J.Super. 35, 400 A.2d 502, 503 (1979); and *Wheeler v. Dept. of Employment Security,* 139 Vt. 69, 421 A.2d 1315 (1980). In *Eastex Packaging Co. v. Department of Industry, Labor and Human Relations,* 89 Wis.2d 739, 279 N.W.2d 248, 253–254 (1979), the Wisconsin Supreme Court reaffirmed its 1941 definition of misconduct in *Boynton Cab Company v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 639 (1941), as follows:

> " ' ... the intended meaning of the word "misconduct," as used in [the unemployment compensation statutes] is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' "

That definition is very similar to the Commission's definition in this case. The Eastex court further stated:

> " * * * [w]hen determining whether a worker's conduct is 'misconduct' which will disqualify such worker from unem-

ployment compensation benefits, the employee's behavior must be considered as an intentional and unreasonable interference with the employer's interests." 279 N.W.2d at 254.

Wyoming's Commission defines the statutory standard, "misconduct," in a manner consistent with its accepted use and meaning in other jurisdictions, while appellant cites no contrary authority applying a different standard of misconduct. We hold that the Commission's definition of misconduct is proper under Wyoming Employment Security law, in accord with the intent of the legislature.

Applying these facts to that rule, there is no doubt that Green inadvertently violated company policy. By permitting Mrs. Ingram to even leave the check-out station preparatory to entering the mine site, Green failed to comply with a policy memorandum. However, the question to be decided is not whether Green violated a company policy or rule, but rather whether she intentionally acted contrary to her responsibility to perform her duties or willfully and *intentionally* disregarded known employer interests.

> The Supreme Court of Idaho has stated: " * * * Violation of an employer's rule is not, per se, misconduct; rather, a deliberate and intentional violation of the spirit of the rule is required." *Simmons v. Department of Employment,* 99 Idaho 290, 581 P.2d 336, 338 (1978).

The Commission's definition of misconduct is consistent with the Idaho interpretation which guards against employer abuse of the misconduct provision. If any violation of an employer's rule was misconduct which would result in the denial of unemployment benefits, then an employer would need only to establish rules so complex or so strict that any employee would ultimately fail to live up to every provision, and would thereby escape the burden of paying unemployment compensation.

The record contains substantial evidence to support the Commission's finding that Green did not commit the willful and inten-

tional acts necessary to constitute misconduct. The hearing examiner determined:

" * Additional testimony demonstrated that certain spouses and family members of mine supervisory personnel might be admitted to the mine site without entrance documentation completed,"

and properly found that

" * * * specific rules and procedures maintained by the employer in a 'pass along book' and policy manual did not specifically address procedures to be followed in admitting spouses of [employees] onto the site * * *.

  *   *   *   *   *   *

"The claimant was discharged following an incident wherein exact operational procedures were vague or not available."

We agree with the hearing examiner that Margo Green's action was a good-faith error in judgment, and affirm the Commission's finding that she was not discharged for the statutorily vitiating misconduct.

Finding reason and justification for the Commission's definition of misconduct, and substantial evidence to support its decision, we affirm the Commission's award of unemployment compensation benefits.

Affirmed.