**EXXON CORPORATION, a New Jersey corporation, Petitioner,**

v.

**WYOMING STATE BOARD OF EQUALIZATION, Respondent.**

No. 88–132.

Supreme Court of Wyoming.

Dec. 7, 1989.

Lawrence J. Wolfe (argued) of Holland & Hart, Cheyenne, Alan Poe of Holland &

Hart, Englewood, Colo., and Kenneth Reither, Exxon Co. U.S.A., Houston, Tex., for petitioner.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Michael L. Hubbard, Senior Asst. Atty. Gen. (argued), and Robert J. Walters, Asst. Atty. Gen., for respondent.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Petitioner, Exxon Corporation, challenges the State's imposition of a use tax on pipe purchased out of the state and installed in a pipeline operating in Wyoming and the failure of the State to grant Exxon a credit against that tax for taxes already paid to the state of Colorado. The State Board of Equalization found that the tax was properly assessed, that it did not violate the commerce clause of the United States Constitution, and that the denial of the offsetting credit was proper.

We affirm.

Petitioner states the issues as:

"I. Did the Board err in upholding a Wyoming use tax assessment against Exxon's use of certain line pipe in Wyoming, when the first use of that pipe, as the term 'use' is defined under Wyoming law, occurred in Colorado?

"II. Did the Board err in refusing to grant a credit against the Wyoming use tax assessment for taxes paid by Exxon to the State of Colorado with respect to the pipe, where such taxes were legally imposed under Colorado law?

"III. Did the Board's imposition of the Wyoming use tax against Exxon's use of the pipe in Wyoming, without providing a credit for the Colorado tax paid by Exxon, violate the commerce clause of the United States Constitution?"

Respondent phrases the issues:

"I. Is the decision of the appellee [respondent] State Board of Equalization holding appellant [petitioner] liable for Wyoming use taxes despite initial delivery of the underlying property to the State of Colorado is not [sic] arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence?

"II. Does the decision of the appellee [respondent] below violate the Commerce Clause of the United States Constitution?"

The essential facts of this case are not disputed and are as follows. Between February and May of 1985, Exxon Corporation (Exxon), a New Jersey corporation, purchased 258,000 feet of 24-inch pipe from Marubeni American Corporation (Marubeni), a Texas vendor. The pipe, costing a total of $13,179,894.83, was to be installed as part of the Shute Creek to Rock Springs $CO_2$ pipeline in Wyoming. After purchase, the pipe was shipped from Kasaoka, Japan, through Portland, Oregon, to Fort Collins, Colorado. There it was inspected, sand blasted, and coated with a thin-film epoxy, processes necessary for the ultimate use of the pipe. After these processes were completed, which took approximately 90 to 120 days, the pipe was shipped to Wyoming and installed in the pipeline.

Exxon later discovered through an internal audit that Marubeni had not collected any tax with respect to the pipe. Exxon determined that a 3 percent tax was due the state of Colorado and voluntarily filed an amended return covering the months of March and May, 1985, and paid a tax in the amount of $395,396.84 plus interest.

Later, the Wyoming Department of Revenue and Taxation (Department) conducted a sales and use tax audit of Exxon, for the period of March 1, 1983, through February 28, 1986; the Department determined that Exxon was liable for a 4 percent use tax to the state of Wyoming on the pipe, pursuant to W.S. 39-6-504, 39-6-412, and 39-6-518.[1]

---

1. W.S. 39-6-504 provides for a 3 percent excise tax on persons storing, using or consuming tangible personal property in the state. An additional 1 percent tax is imposed pursuant to W.S. 39-6-412 and 39-6-518, which allow a county to impose its own excise tax upon storage, use and consumption of tangible personal property in the county. Sweetwater County,

In a final administrative decision, the Department concluded that the first use of the pipe[2] had occurred in Wyoming and assessed a use tax against Exxon in the amount of $527,195.79 plus interest. In assessing the tax, the Department further denied Exxon a credit against the use tax for the amount of tax previously paid to Colorado because the tax paid to Colorado was a use tax for which no credit was permitted under the governing statutes.

Exxon timely appealed the Department's assessment to the State Board of Equalization (Board). At an evidentiary hearing, Exxon contended that its use of the pipe in Wyoming was not subject to the use tax because the "first use" of the pipe, as that phrase is contemplated in the tax commission's rules and regulations and as the term "use" is defined by Wyoming law, occurred in Colorado. Alternatively, Exxon argued that if a use tax were indeed owed, such a tax should be offset by the amount of tax paid to the state of Colorado as a result of the activities with respect to the pipe in that state. Finally, Exxon contended that the imposition of the use tax by Wyoming, without the offsetting credit for the tax already paid to Colorado, constituted a violation of the commerce clause by creating an undue burden on and discrimination against interstate commerce. The Board rejected each of Exxon's arguments and affirmed the use tax assessment against Exxon and the denial of the offsetting credit.

Exxon paid the assessment and interest under protest and filed a timely petition for review of the Board's order in the First Judicial District Court. Pursuant to Rule 12.09, W.R.A.P., the case was certified to this court.

When a case is certified to this court under Rule 12.09, "we must review the decision of the [Board] under the appellate standards applicable to a reviewing court of the first instance." *Application of Campbell County*, 731 P.2d 1174, 1175 (Wyo.1987). The scope of review of an agency action is established in W.S. 16–3–114(c):

"To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

See *Safety Medical Services, Inc. v. Employment Security Comm'n*, 724 P.2d 468, 471–72 (Wyo.1986); *Trout v. Wyoming Oil and Gas Conservation Comm'n*, 721 P.2d 1047, 1049 (Wyo.1986); *Board of County Comm'rs v. Teton County Youth Services, Inc.*, 652 P.2d 400, 411 (Wyo.1982). This court must examine the entire record to determine if there is substantial evidence to support the agency's findings; if an agency's decision is supported by substantial evidence, this court cannot properly substitute its judgment for that of the agency and must uphold the agency's findings on appeal. *Trout*, 721 P.2d at 1050. Substantial evidence is "relevant evidence

---

where the pipe was installed, elected to impose the additional tax.

**2.** *See infra* fn. 3, for wording of Chapter IV, § 3 of the Rules and Regulations of the Wyoming State Tax Commission.

which a reasonable mind might accept in support of the conclusions of the agency." *Id.*

In its brief on appeal, Exxon claims that the Board's order upholding the use tax assessment is arbitrary and capricious, unsupported by substantial evidence, and lacks statutory right in that it alters or impairs "the statutory definition of 'use.'" The Board made findings of fact and conclusions of law in support of its order. Exxon agrees that the facts are not in dispute but contends that the Board's application of relevant law to the facts was erroneous.

The Wyoming use tax statutes, W.S. 39–6–501 through –518, impose an excise tax upon "persons storing, using or consuming tangible personal property" in Wyoming. W.S. 39–6–504(b). The legislature intended that the use tax be complementary to the Wyoming sales tax. *Morrison–Knudson Co., Inc. v. State Board of Equalization,* 58 Wyo. 500, 135 P.2d 927, 932 (1943). *See also* Chap. IV, § 3, Rules and Regulations of the Wyoming State Tax Commission— Department of Revenue & Taxation. The use tax is applied to property purchased outside the state and brought into the state for storage, use or consumption, so as to put that property on an equal footing with property purchased within the state that is subject to the Wyoming sales tax. *Id.*

■ Wyoming has placed a self-imposed limitation on the broad authority to tax property bought outside but used inside this state. Through Chapter IV, §§ 3 and 8 of the Rules and Regulations of the Wyoming State Tax Commission—Department of Revenue and Taxation (hereinafter referred to as Chap. IV, §§ 3 and 8), the State is permitted to apply the use tax to particular tangible personal property bought out of state only if the use of the property in Wyoming constitutes its "first use." [3] "Use" is defined in Wyoming as "the exercise of any right or power over tangible personal property incident to ownership or by any transaction where possession is given by lease or contract." W.S. 39–6–502(a)(vii). By implication, and as a logical extension, if the first use of the property occurs in another state, Wyoming's use tax is inapplicable.

■ Petitioner argues that the use tax imposed by Wyoming was improper because the "first use" of the pipe, as that phrase is contemplated by Chap. IV, § 3 and as the term "use" is statutorily defined, occurred in Colorado through its delivery and the coating process that occurred there. Thus, the question we must determine is whether the activities in Colorado constitute a bona fide first use of the property rendering the Wyoming use tax inapplicable. Exxon characterizes the actions taken in Colorado with respect to the pipe as an exercise of a "right or power over tangible personal property incident to ownership." W.S. 39–6–502(a)(vii). We disagree with this characterization.

The activities in Colorado were merely processes necessary to prepare the pipe for the use intended, i.e., its installation into and ultimate use as part of the Shute Creek $CO_2$ pipeline in Wyoming. The Board properly concluded that it is a use of the property in the manner for which it was designed, constructed or intended that constitutes a "first use" as that phrase was intended by the Wyoming Tax Commission in Chap. IV, § 3. When making the determination as to whether the first use of the property occurred in Wyoming or another state, the Tax Commission looks to the nature of the property, its intended use, and whether the property was actually used in that manner in the other state. We hold that the Board properly found that the first use in this case was the incorporation

---

**3.** Chap. IV, § 3 provides:

"The purchase or lease of all tangible personal property outside this state for *first use,* storage or consumption within this state, is subject to use tax, providing the same transaction would be subject to sales tax if the transaction had occurred wholly within the State of Wyoming." (emphasis added)

Chap. IV, § 8 provides:

"When tangible personal property is purchased in another state and is brought into Wyoming for use, the burden is upon the purchaser to show that there was a bona fide first use of the property outside the State of Wyoming."

of the pipe into the Shute Creek $CO_2$ pipeline.

■ We next address Exxon's claim that the Board should have granted Exxon a credit for the tax paid to Colorado. As noted earlier, the general goal of use taxes is to place in-state sellers on the same footing as out-of-state sellers. Annotation, *Use Tax—Credit for Out–of–State Taxes*, 31 A.L.R.4th 1206 (1984). In furtherance of this goal, many states, including Wyoming, grant credits against their use taxes for sales taxes actually paid to other states on the same property. Testimony at the Board's hearing from a representative of the Department indicates that it is the routine practice of the Department to grant an offsetting credit for sales taxes legally imposed by another state. In this proceeding, however, the facts supported the Department's decision to refuse the credit. In its order, the Board found that the tax paid by Exxon to Colorado was a use tax and not a sales tax under Colorado regulation 26.202, Colorado Administrative Code. There is no statute, regulation or applicable principle of law which requires the Board to grant a credit for a use tax paid in another state. Under these circumstances, we are compelled to hold that the Board properly denied Exxon a credit for the use tax paid in Colorado.

■ Exxon finally contends that the imposition of the Wyoming use tax on the use of the pipe in Wyoming is an unconstitutional burden on interstate commerce in violation of the commerce clause of the United States Constitution and that the application of the tax results in double taxation of the pipe. Section 8 of Art. I of the United States Constitution states that "Congress shall have Power * * * to regulate Commerce * * * among the several States."

The seminal case regarding the issue of validity of a state use tax vis-a-vis the commerce clause is *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). In that case, the United States Supreme Court articulated a four-prong test for analyzing whether a particular state tax can be upheld under the commerce clause. According to *Complete Auto*, a tax will survive a commerce clause challenge "when the tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." *Complete Auto*, 430 U.S. at 279, 97 S.Ct. at 1079. Here, petitioner argues that the tax in question fails to fulfill the second and third requirements of the test, that it is not fairly apportioned, and that it discriminates against interstate commerce.

■ The commerce clause does prohibit state regulations that either discriminate against interstate commerce or impose a burden on commerce that clearly outweighs the legitimate local benefits produced by the regulation. *Henneford v. Silas Mason Co.*, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937). In *Complete Auto*, however, the Supreme Court rejected the abstract notion that interstate commerce is immune from state taxation. *Complete Auto*, 430 U.S. at 288, 97 S.Ct. at 1083. The Court recognized that, with certain exceptions, interstate commerce could be required to pay its fair share of state taxes. *Complete Auto*, 430 U.S. at 281, 97 S.Ct. at 1080. Moreover, the Constitution does not prohibit uniform nondiscriminatory taxes on property merely because that property was subject to tax elsewhere. Nowak and Rotunda, *Sales and Use Tax Credits, Discrimination Against Interstate Commerce, and the Useless Multiple Tax Concept*, 20 U.C.Davis L.Rev. 273, 300 (1987).

The taxing scheme employed by Wyoming fulfills each prong of the *Complete Auto* test: (1) the activity being taxed has a substantial nexus to the taxing state; the pipe was delivered in Wyoming and installed in a pipeline operating solely in this state; (2) it is fairly apportioned, since it taxes only the use of the pipe in Wyoming; (3) it does not discriminate against interstate commerce because the tax is designed to compensate the State for revenue lost on out-of-state purchases of goods used in this state and is equal to the sales tax on the same goods had they been purchased in

Wyoming, W.S. 39–6–404(a); and (4) it is fairly related to state-provided services that facilitate Exxon's use of the pipe in Wyoming, including fire and police protection for the pipeline facilities and state maintenance of roads to the area. See *D.H. Holmes Co., Ltd. v. McNamara,* 486 U.S. 24, ——, 108 S.Ct. 1619, 1624, 100 L.Ed.2d 21 (1988). Because each of the prongs is fulfilled, we hold that the use tax imposed by the Board does not violate Art. I, § 8 of the United States Constitution. We need not speculate whether the tax Exxon voluntarily paid Colorado could survive this same analysis.

In light of the foregoing, we hold that the Board's decision was not arbitrary or capricious, an abuse of discretion, nor in excess of statutory authority. The Board's decision was supported by substantial evidence.

Affirmed.

URBIGKIT, Justice, dissenting.

Appellant, Exxon Corporation (Exxon), purchased Japanese manufactured pipe for construction of its billion dollar Shute Creek to Rock Springs, Wyoming carbon dioxide natural gas production plant. The raw pipe was shipped by boat to Portland, Oregon, reloaded by rail, and unloaded in Fort Collins, Colorado. Following processing, the pipe was reloaded for delivery to the industrial plant for line installation in Wyoming. With an invoice price of approximately $13 million, Exxon paid a $421,-839.38 tax to the state of Colorado, $395,-396.84 plus interest of $26,442.54, calculated by a three percent transaction tax. It is the additional $703,551.28 tax assessed by the Wyoming Department of Revenue and Taxation as a use tax computed at four percent, $527,195.79 plus $176,355.49 in interest, which creates this appeal.

I dissent philosophically in opposition to a double tax imposed with both adverse affect on interstate commerce and significant contribution to the appearance of Wyoming as inhospitable to desperately needed economic development. Technically, I would find a first use in Colorado, as contrary to the conclusion of the Wyoming

Department of Revenue and Taxation, with resulting credit to be given by Wyoming for the Colorado tax paid. Present justification for the double personal property enterprise or transaction tax following acquisition and initial processing in Colorado and reshipment for final installation in Wyoming on the basis that the tax in Colorado was a use tax and not a sales tax fails, in my opinion, to satisfy a commerce clause federal constitutional challenge.

The Colorado events require factual examination. The pipe was unloaded in Portland, Oregon, shipped by interstate commerce, probably through Wyoming, to Fort Collins to be processed for ultimate use, and then reloaded and shipped for installation in Wyoming. Amended purchase orders were executed to secure the pipe preparation services of Energy Coating Company (Encoat) in Fort Collins, which accepted delivery from the Japanese shipper, Marubeni American Corporation, as an agent for Exxon. Processing by Encoat in Fort Collins included unloading, inspection, sandblasting, coating and reloading as a 90 to 120–day process, totalling an order value subject to time adjustments of $709,500. A third-party hauler accepted delivery from Encoat to deliver the pipe to the Exxon plant site in Wyoming. Exxon took technical possession and acquired title to the pipe following delivery "F.O.B.," where payment was made to the vendor. This record reveals no conflict of fact on these transactional events.

The significant dispute in this appeal considers whether a first use and consequent taxable event occurred in Colorado and, if so, whether there was a basis upon which credit against that tax should have been given on the subsequent tax levied in Wyoming. In order to escape the persuasion of constitutional arguments otherwise available, it is the apparent thesis of the Wyoming Department of Revenue and Taxation that payment of the tax in Colorado was an unnecessary gift and only Wyoming had a right to tax the product during transit and until actually consumed in use at the Wyoming gas plant. The majority rejects the first use in Colorado as "merely processing

necessary to prepare the pipe for its use intended, i.e. its installation into and ultimate use as part of the Shute Creek CO2 pipeline in Wyoming."

Thus presented are the strange ingredients in this case. First, it is said the pipe was not used in Colorado, it is then argued the Colorado tax was a use tax, and since the Colorado assessment was for a use tax, to be opposite of a sales tax, no credit would be given for the Wyoming tax. I perceive a clear first use in Colorado to process for ultimate usability. Next, I find no constitutional basis to differentiate the transactional tax in Colorado to be a use tax and then discern the pipe was not used until final destination in Wyoming.

In simple yet absolute terms, this adaptation by taxing authorities as now approved by this majority permits a double taxation of a product in the interstate stream of commerce. It would be no different than if the manufacturing exemption might be ignored so each jurisdiction could assess the transactional tax on raw materials and components until the finished car could be completed and finally delivered to a Wyoming buyer. By then, the tax burden would make the price beyond the capacity of most prospective purchasers. The all-embracing Wyoming depression, as a product of the national decade of greed of the 1980's, needs no acceleration from appearances of additional tax greed when wealth producers and not wealth removers are required to restore the economic capacities for this state.

My review of the premier United States Supreme Court decisions does not lead to a countervailing persuasion. In the Grand Coulee Dam construction case, Justice Cardozo said:

A use tax is never payable where the user has acquired property by retail purchase in the state of Washington, except in the rare instances in which retail purchases in Washington are not subjected to a sales tax. On the other hand, a use tax is always payable where the user has acquired property by retail purchase in or from another state, unless he has paid a sales or use tax elsewhere before bringing it to Washington. * * *

     *     *     *     *     *     *

Equality is the theme that runs through all the sections of the statute. There shall be a tax upon the use, but subject to an offset if another use or sales tax has been paid for the same thing. This is true where the offsetting tax became payable to Washington by reason of purchase or use within the state. It is true in exactly the same measure where the offsetting tax has been paid to another state by reason of use or purchase there. No one who uses property in Washington after buying it at retail is to be exempt from a tax upon the privilege of enjoyment except to the extent that he has paid a use or sales tax somewhere. Every one who has paid a use or sales tax anywhere, or, more accurately, in any state, is to that extent to be exempt from the payment of another tax in Washington.

*Henneford v. Silas Mason Co.*, 300 U.S. 577, 581–84, 57 S.Ct. 524, 526–27, 81 L.Ed. 814 (1937). Consequently, we can see the logic of Justice Cardozo would deny validity to the dual tax imposed here.

*Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326, *reh'g denied* 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977) does not lead to a contrary persuasion. A general review of the United States Supreme Court decisions in these cases reveals two categories. The first category is a gross receipts tax and the second is, as present here, a personal property acquisition or use tax. Emplaced in this case as different from *Complete Auto Transit, Inc.*, which was measured by gross receipts, and similar to *Henneford*, which was measured by product acquisition, interstate commerce can be differently affected by embracing tax as an acquisitions tax rather than a gross receipts tax. Applying the *Complete Auto Transit, Inc.* criteria as a broader transactional tax limitation, we are still presented discrimination against interstate commerce as a result from the double tax assessed here, first by Colorado and then again after

initial processing by Wyoming. Likewise, as a matter of definition, a double tax is not fairly apportioned (prong 2 of the test in *Complete Auto Transit, Inc.*). W.S. 39-6-505(a)(iii) requires that Wyoming's taxation system be in harmony with the laws and constitutions of the United States and this state. It was not altruistic of the legislature to provide this exemption, it is founded in constitutional law to assure the transactional tax is constitutional.[1]

Nor are the limiting requirements of the Rules and Regulations of the Wyoming Tax Commission–Department of Revenue and Taxation, Chapter IV, Sections 3 and 8 altruistic either. Those regulations recognize that double application of the transaction tax impinges upon the Cardozo criteria prohibiting dual taxation from the state burden impressed upon interstate commerce. Unfortunately, and I suggest unconstitutionally, we accord general recognition to the transaction tax designated as a sales tax, but with undefinable logic to not apply where our state authorities determine that the foreign state tax was a use tax. It is not unreasonable to reflect if used there, it cannot be re-used for constitutional taxing purposes here. Recognizing the second character of reversible agency action which is found to be contrary to constitutional right, power, privilege, or immunity, I would reverse this decision and require appropriate apportionment to avoid a double burden on the property when it moves into Wyoming through the interstate commerce stream. How much more significant can we find a burden on interstate commerce than are accommodated by these facts. Had the Encoat plant been located in Cheyenne, this pipe could only have been taxed once; but with location of first processing in Colorado, a dual tax on the same transaction is created.

In technical character, this appeal presents two separate inquiries. The first is procedural in analysis of the standard of deference to be given to the first use decision of the Wyoming Department of Revenue and Taxation. The second constitutionally implicates the unapportioned double tax on the pipe derived separately from acts of both Colorado and now Wyoming as it affects interstate commerce within the purview of *Complete Auto Transit, Inc.* and the "internal consistency" criteria concept by the United States Supreme Court in more recent cases, including most currently, *Goldberg v. Sweet*, ‒‒ U.S. ‒‒, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989).

Under the first issue, the majority introduces its opinion as though the Wyoming State Board of Equalization's decision involves a question of fact to which judicial deference is appropriate during review. I would argue the Wyoming State Board of Equalization's decision involves a question of law to which deference is inappropriate. This majority gives no deference to the view of the law taken by the trial court or administrative agency. We review legal conclusions for correctness as an original inquiry. *Griffin v. Bethesda Foundation*, 609 P.2d 459 (Wyo.1980); *Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382 (Utah 1989); *Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis.2d 797, 440 N.W.2d 329 (1989). A reviewing court is directed to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." W.S. 16-3-114(c). While the latter portion of this statute seems sufficient to direct this court to determine the Wyoming Department of Revenue and Taxation's meaning of "first use" under the statutory framework of "use" provided by the legislature in W.S. 39-6-502(a)(vii), *BHP Petroleum Co., Inc. v. State, Wyoming Tax Com'n*, 766 P.2d 1162, 1165 (Wyo.1989) guides our understanding of when a question for review is one of law. *BHP Petroleum Co., Inc.* draws support from *Rocky Mountain Oil and Gas Ass'n v. State*, 645 P.2d 1163 (Wyo.1982), which deals in part with the

---

**1.** In addition to the constitutional basis for this exemption, the powers of the special interests can be found in approximately thirty other exemptions for sales and use tax within twenty-four specific provisions of the sales tax, W.S. 39-6-405, and thirteen other exemptions of the use tax, W.S. 39-6-505.

intersection of a declaratory judgment action and a court also serving as an appellate court for the same issue. The declared principle which guides the granting or withholding of declaratory relief by that court is the guiding principle which separates questions of law from questions of fact.

> [W]here the relief desired is in the nature of a substitution of judicial decision for that of the agency on issues pertaining to the administration of the subject matter for which the agency was created, the action should not be entertained. If, however, such desired relief concerns the validity and construction of agency regulations, or if it concerns the constitutionality or interpretation of a statute upon which the administrative action is, or is to be, based, the action should be entertained.

*Id.* at 1168.

Accordingly, I would not defer to the Wyoming Department of Revenue and Taxation's construction of "first use" as the "use of the property in the manner for which it was designed, constructed or intended." I would hold under W.S. 16–3–114(c)(ii)(C) the Wyoming Department of Revenue and Taxation acted in excess of its authority as it is not authorized to overwhelm the effect of the legislature's definition of "use" by the construction given its term "first use."

The Wyoming legislature defined "use" to mean "the exercise of *any* right or power over tangible personal property incident to ownership or by *any* transaction where possession is given by lease or contract." W.S. 39–6–502(a)(vii) (emphasis added). I would confine the application of the Wyoming Department of Revenue and Taxation's term "first use" to operate only within the parameter established by the legislative definition of "use."

There is no dispute in the record that Exxon took possession of the pipe in Colorado by contract and exercised a power of ownership by contracting to have the pipe coated with epoxy. This is the exercise of "*any* right or power over tangible personal property incident to ownership * * *."

W.S. 39–6–502(a)(vii) (emphasis added). The legislature's definition of "use" captures the transaction which occurs by Exxon's exercise of a power of ownership. If a transaction can be captured by the legislature's definition of "use," I would not permit that transaction to escape capture by the construction of a term provided by an agency. I believe the Wyoming State Board of Equalization's conclusion of what the Wyoming Department of Revenue and Taxation meant by "first use" is improper under such clear language by the Wyoming legislature.

My dissent on the first issue is not confined to the issue of deference on a question of law. I do not understand the precedent relied on by the majority to support the need for judicial deference to an agency alongside the facts in this case.

In *Safety Medical Services, Inc. v. Employment Sec. Com'n of Wyoming*, 724 P.2d 468, 472 (Wyo.1986), cited by the majority, ante at 689, *Safety Medical Services, Inc.* argued the plain language of a Wyoming statute was sufficient to undermine the Wyoming Employment Security Commission's interpretation of what constituted "misconduct." We disagreed because the definition given "misconduct" by that agency was "in accord with definitions in other jurisdictions and expresses the plain, commonly understood meaning of the word misconduct." *Id.* at 472. We held that way because we saw the Wyoming Employment Security Commission's definition of misconduct to be "in accord with the intent of the legislature." *Id.* at 473. For the reasons explained above, this seems not to be the case here. I do not find where the construction given "first use" by the Wyoming Department of Revenue and Taxation is in accord with other jurisdictions, nor do I find that definition to be the "commonly understood meaning" of the phrase "first use." *See Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); *Great American Airways v. Nevada State Tax Com'n*, 101 Nev. 422, 705 P.2d 654 (1985), *cert. denied* 479 U.S. 817, 107 S.Ct. 74, 93 L.Ed.2d 31 (1986); and *United Parcel Service, Inc. v.*

*State, Dept. of Revenue,* 102 Wash.2d 355, 687 P.2d 186 (1984); *cf. Burroughs Corp. v. State Bd. of Equalization,* 153 Cal. App.3d 1152, 200 Cal.Rptr. 816, 820 (1984), "primary purpose" test used to resolve taxable use from exempt use. The argument can reasonably be made that had the Wyoming Department of Revenue and Taxation's meaning of "first use" been commonly understood, it would have unveiled the sources which indicate such common construction accorded "first use."

As for the two remaining precedents cited by the majority, *Trout v. Wyoming Oil and Gas Conservation Com'n,* 721 P.2d 1047, 1049 (Wyo.1986) says no more than this court will not substitute its judgment for the agency regarding the findings or conclusions necessary to questions of fact. *Board of County Com'rs of Teton County v. Teton County Youth Services, Inc.,* 652 P.2d 400, 411 (Wyo.1982) simply explains the need for a record to be developed for judicial review. Both propositions are established principles in Wyoming law, but do not add to the majority's dialogue.

Finally, this result collides with common sense. The Wyoming Department of Revenue and Taxation held that Exxon must pay a use tax to Wyoming because the tax it paid Colorado was actually a use tax and not a sales tax—for which credit would have been given; yet if the tax paid in Colorado was actually for its use of the property, how could "first use" occur in Wyoming?

While I disagree with the majority that Wyoming law permits an agency conclusion that Exxon's first use of its property in Colorado was not "first use", I do agree there is no state imposed requirement that Wyoming grant to Exxon a credit against our use tax for the "use tax" paid to Colorado. Beyond that narrowing to our disagreement, I would hold the requirement to grant that credit is imposed by the United States Constitution. If our national constitution requires a credit under the facts of this case, the answer to Exxon's third issue, that Wyoming's failure to grant it credit collides with the commands of the Commerce Clause, disposes of the second issue.

This majority adduces that the Wyoming State Board of Equalization was correct in concluding that the Wyoming Department of Revenue and Taxation properly characterized the transactional tax paid to Colorado to be a use tax rather than a sales tax. That characterization is required to avoid the requirement under Wyoming law that a sales tax legally imposed by and paid to another state be credited against our use tax. Wyoming now imposes a use tax on property for which it is claimed that only a use tax was paid to Colorado. This majority then detects no constitutional hardship to multiple use taxes under this scenario. That conclusion and the argument used to support it have yet to be finally tested since the United States Supreme Court has not decided if the national constitution requires a sales or use tax paid in one state be credited against a use tax assessed in another state.[2]

For the majority to be confident in their claim, their supporting argument should account for more than the four-pronged test in *Complete Auto Transit, Inc.,* 430 U.S. 274, 97 S.Ct. 1076. It should also account for the relatively recent, *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545, *reh'g denied* 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983), and obviously evolving, *American Trucking Associations, Inc. v. Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), "internal consistency" test now used to measure cumulative tax burdens from multiple taxes on interstate commerce. Although this particular test is new, the problems arising

---

**2.** Hellerstein, *Is "Internal Consistency" Foolish?: Reflections on an Emerging Commerce Clause Restraint on State Taxation,* 87 Mich.L.Rev. 138, 160–61 (1988); Nowak & Rotunda, *Sales and Use Tax Credits, Discrimination Against Interstate Commerce, and the Useless Multiple Tax Concept,* 20 U.C.Davis L.Rev. 273, 275 n. 6

(1987); L. Tribe, *American Constitutional Law,* at 458 n. 26 (1988). *See Williams v. Vermont,* 472 U.S. 14, 21–22, 105 S.Ct. 2465, 2471, 86 L.Ed.2d 11 (1985); *Southern Pac. Co. v. Gallagher,* 306 U.S. 167, 172, 59 S.Ct. 389, 391, 83 L.Ed. 586 (1939); and *Henneford,* 300 U.S. at 587, 57 S.Ct. at 529.

from notions of fair apportionment and interstate discrimination from cumulative tax burdens were recognized a half century ago. So understood, this "internal consistency" test relates to the second and third prongs of the *Complete Auto Transit, Inc.* test. The question of effective discrimination against interstate commerce cannot be answered by reciting Wyoming's independent right to tax Exxon's use of its pipe.

> *[T]he state may not impose certain taxes on interstate commerce*, its incidents or instrumentalities, which are no more in amount or burden than it places on its local business, not because this of itself is discriminatory, cumulative or special or would violate due process, but *because other states also may have the right constitutionally*, apart from the commerce clause, to tax the same thing *and either the actuality or the risk of their doing so makes the total burden cumulative, discriminatory or special.*

*International Harv. Co. v. Department of Treasury of State of Indiana*, 322 U.S. 340, 358, 64 S.Ct. 1019, 1035, 88 L.Ed. 1313 (1944) (emphasis added).[3] There is an easy way to see the danger which the "internal consistency" test appears designed to detect. Imagine corporations as ships and taxes as barnacles. If ships acquire new barnacles at each state line, there will come a point when the ships which make the longest journeys will exhibit the most drag because they will have acquired the most barnacles. These ships are disadvantaged unfairly relative to the local carriers and ultimately may not competitively get to a particular final destination.

In *Container Corp. of America*, 463 U.S. 159, 103 S.Ct. 2933, the United States Supreme Court announced an "internal consistency" test which attached to apportionment questions on state income taxes for interstate businesses. Under the "internal consistency" approach, the United States Supreme Court imagined what would happen if all the states duplicated the defendant-state's taxing scheme. To pass constitutional muster, the formula could not re-

sult in "more than all of the unitary business' income being taxed" if repeated by all states. *Id.* at 169, 103 S.Ct. at 2942.

In *Armco, Inc. v. Hardesty*, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540, *reh'g denied* 469 U.S. 912, 105 S.Ct. 285, 83 L.Ed.2d 222 (1984), the court's decision of whether West Virginia's business and occupation tax scheme was constitutionally acceptable depended on the outcome of the "internal consistency" test applied to a non-income tax scheme inquiry. In hindsight, the elasticity to the "internal consistency" test first appeared in *Armco, Inc.* when the test moved effortlessly from income tax adaptations to excise tax systems.

After *Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), it became obvious the "internal consistency" test was gaining currency in the high court's vocabulary of commerce clause analysis. In discrediting *General Motors Corp. v. Washington*, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430, *reh'g denied* 379 U.S. 875, 85 S.Ct. 14, 13 L.Ed.2d 79 (1964), *overruled sub nom. Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue*, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), relied on by Washington in *Tyler Pipe Industries, Inc.*, the United States Supreme Court said that case was not controlling because it required "the taxpayer to prove that specific interstate transactions were subjected to multiple taxation in order to advance a claim of discrimination," *Tyler Pipe Industries, Inc.* 483 U.S. at 242, 107 S.Ct. at 2817, a requirement "categorically rejected" in *Armco, Inc.*, 467 U.S. 638, 104 S.Ct. 2620. The burden of proof has been relocated from the interstate commerce plaintiff to the defendant state. Also, the United States Supreme Court made more than a passing reference to *Henneford*, 300 U.S. 577, 57 S.Ct. 524. The United States Supreme Court stressed the importance in *Henneford*, that the use tax did not apply to any article of tangible personal property

---

**3.** *See* Hellerstein, *supra n. 2,* 87 Mich.L.Rev. at 139 n. 13. In concept, a state might have taxed on an ad valorem basis, the transactional facts

of a boat unloading and reloading for land transportation.

"the sale or use of which had already been taxed at an equal or greater rate under the laws of Washington or some other state." *Tyler Pipe Industries, Inc.* 483 U.S. at 245, 107 S.Ct. at 2819. The dissent in *Tyler Pipe Industries, Inc.*, 483 U.S. at 255, 107 S.Ct. at 2824 argued "the Court is compelled to overrule" the large block of cases which permitted a more liberal construction of state power to tax. The United States Supreme Court indeed appears poised to administer a more conservative and restrictive construction of state taxing power.

In *American Trucking Associations, Inc.*, 483 U.S. 266, 107 S.Ct. 2829, the "internal consistency" test again demonstrated a new muscularity by its application to Pennsylvania's trucking axle flat tax scheme. The truckers had argued Pennsylvania's registration fees, fuel consumption taxes and "flat taxes" violated the commerce clause. The United States Supreme Court majority allowed the registration and fuel tax schemes before turning to the flat tax scheme. The registration fees posed no "impermissible interference with free trade because every State respects the registration of every other State." *Id.* at 283, 107 S.Ct. at 2840. Across-the-board state reciprocity for registration fees paid to other states makes these fees constitutional. Fuel taxes apportion themselves, of course. The Pennsylvania flat tax scheme, however, had gone beyond requiring interstate commerce simply to pay its way.

The "internal consistency" test was fatal to Pennsylvania's flat tax scheme because of the cumulative burden to interstate commerce if all other states adopted a like scheme. If all states cannot adopt the scheme simultaneously without crippling interstate commerce, no one state is allowed to do so.

The point in bringing up these cases is to show that the "internal consistency" test appears to be growing.

In its guarantee of a free trade area among States, however, the Commerce Clause has a deeper meaning that may be implicated even though state provisions, such as the ones reviewed here, do not allocate tax burdens between insiders and outsiders in a manner that is facially discriminatory.

*Id.* at 281, 107 U.S. at 2839. See also discussion of internal consistency by the Michigan Supreme Court in *Trinova Corp. v. Department of Treasury*, 433 Mich. 141, 445 N.W.2d 428 (1989).

That Wyoming chooses to call the Colorado tax a use tax should prove no impenetrable barrier to "internal consistency" test analysis.

[T]he trouble arises, under the commerce clause, not from any danger that either tax taken alone, whether characterized as "sales" or "use" tax, will put interstate trade at a disadvantage which will burden unduly its competition with the local trade. So long as *only one tax is applied* and at the same rate as to wholly local transactions, no unduly discriminatory clog actually attaches to the interstate transaction of business.

*International Harv. Co.*, 322 U.S. at 358–59, 64 S.Ct. at 1035 (emphasis added).

The United States Supreme Court this past term returned to the internal and external consistency taxation review in the Illinois telecommunications excise tax case of *Goldberg*, 109 S.Ct. 582. It is significant for that decision that a credit against the Illinois tax was provided by the law for taxes paid "in another State on the same telephone call which triggered the Illinois tax." *Id.* at 586. At issue for challenged invalidity under the commerce clause was taxpayer's contention that the tax was not fairly apportioned as the second prong of the *Complete Auto Transit, Inc.* test. Writing for the six member majority, Justice Marshall discerned: [4]

In analyzing these contentions, we are mindful that the central purpose behind the apportionment requirement is to en-

---

**4.** See anticipatory discussion of *Goldberg* in Hellerstein, *supra n. 2*, 87 Mich.L.Rev. at 186. *See also* Hellerstein, *State Taxation of Interstate Business: Perspectives on Two Centuries of Constitutional Adjudication*, 41 Tax Lawyer 37 (1987) and Note, *The "Internal Consistency" Test is Alive and Well: Tyler Pipe Industries, Inc. v. Washington Department of Revenue*, 41 Tax Lawyer 587 (1988).

sure that each State taxes only its fair share of an interstate transaction. See, *e.g., Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545 (1983). But "we have long held that the Constitution imposes no single [apportionment] formula on the States," *id.*, at 164, 103 S.Ct., at 2939, and therefore have declined to undertake the essentially legislative task of establishing a "single constitutionally mandated method of taxation." *Id.*, at 171, 103 S.Ct., at 2943; see also *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 278–280, 98 S.Ct. 2340, 2347–2348, 57 L.Ed.2d 197 (1978). Instead, we determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent. *Scheiner*, 483 U.S., at ——, 107 S.Ct., at ——; *Armco Inc. v. Hardesty*, 467 U.S. 638, 644, 104 S.Ct. 2620, 2623, 81 L.Ed.2d 540 (1984); *Container Corp., supra*, 463 U.S., at 169–170, 103 S.Ct., at 2942–2943.

To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result. 463 U.S., at 169, 103 S.Ct., at 2942. Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute. * * *

\*       \*       \*       \*       \*       \*

The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the instate component of the activity being taxed.

*Goldberg*, 109 S.Ct. at 588–89.

The thesis of *Goldberg* fails completely here since Wyoming provided neither credit nor apportionment for the pipe acquisitional tax as separately levied by both Wyoming and Colorado. Consequently, I would perceive an inherent "internal consistency" inconsistency with the present Wyoming application of its unapportioned second tax to the Exxon pipe.

I would reverse and remand to require tax apportionment between Wyoming and Colorado by credit for the benefit of the taxpayer.